UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TINA GERLACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00072-TWP-MG |
| | ) | |
| TODD ROKITA, in his official capacity as | ) | |
| Indiana Attorney General and his individual | ) | |
| capacity, | ) | |
| KELLY MITCHELL, in her official capacity as | ) | |
| Indiana Treasurer, | ) | |
| CURTIS HILL, in his individual capacity, and | ) | |
| AARON NEGANGARD, in his individual | ) | |
| capacity, | ) | |
| Defendants. | ) | |

## <u>ENTRY ON PENDING MOTIONS</u>

This matter is before the Court on a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), filed by Defendants Todd Rokita ("Rokita"), Kelly Mitchell ("Mitchell"), Curtis Hill ("Hill"), and Aaron Negangard's "(Negangard") (collectively, "Defendants") (Filing No. 32).  Also before the Court is Plaintiff Tina Gerlach's ("Gerlach") Motion to Strike, or Alternatively, for Leave to File a Surreply (Filing No. 42), and Motion for Oral Argument (Filing No. 43). Gerlach initiated this lawsuit bringing claims under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 for violation of the Takings Clause.  The Defendants, after filing their Answer (Filing No. 22), moved for judgment on the pleadings. Gerlach filed a response (Filing No. 36) and, following the filing of the Defendants' reply (Filing No. 41), filed a Motion to Strike (Filing No. 42) and Motion for Oral Argument (Filing No. 43). For the following reasons, the Motion for Judgment on the Pleadings is **granted**, and the Motions to strike and for oral argument are **denied**.

# I.   <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Complaint and draws all inferences in favor of Gerlach as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

The Defendants are the current Indiana Attorney General Todd Rokita, former acting Attorney General Aaron Negangard, former Attorney General Curtis Hill, and former Indiana State Treasurer Kelly Mitchell.[1]

The Revised Indiana Unclaimed Property Act, just like its predecessors, is a custodial act: it collects and ostensibly safeguards property belonging to private citizens that has lain dormant for a specified period of time with banks, insurance companies, and other public and private firms. (Filing No. 1 at 4, ¶ 12.)  Under the Revised Indiana Unclaimed Property Act, the Attorney General is authorized to take possession of certain unclaimed property.  Ind. Code § 32-34-1.5-12; Ind. Code § 32-34-1.5-13.  The Attorney General maintains an account "with an amount of funds the attorney general reasonably estimates is sufficient to pay claims" and is required to transfer remaining funds or proceeds from sale of the property to the Indiana State Treasurer who is required to place those funds into the State's abandoned property fund.  Ind. Code § 32-34-1.5-42. The Treasurer is further required to transfer the balance of the abandoned property fund in excess of $500,000.00 to the State's general fund at least once per year.  Ind. Code § 32-34-1.5-44.  The Attorney General administers these statutory provisions through the Attorney General Office's Unclaimed Property Division (Filing No. 1 at 4, ¶ 13).

---

[1] At the time the Complaint in this suit was filed, Ms. Mitchell held the office of Indiana State Treasurer.  Her term has since ended.

Gerlach, is a current Kentucky resident and former Indiana resident. *Id.* at 1. She had two pieces of property valued over $100.00 that were turned over to the Indiana Unclaimed Property Division pursuant to the Act. ([Filing No. 1 at 6](#), ¶ 25). Ms. Gerlach claimed one of these pieces, and the State of Indiana approved the claim and paid $100.93 to Ms. Gerlach on November 8, 2021. *Id.* at ¶ 26. Ms. Gerlach was not paid interest earned by the property while held by the State. *Id.* The second piece of property remains in the custody of the Attorney General. *Id.* To date, no claim has been made by Ms. Gerlach on this property through the Unclaimed Property Division. *Id.* Neither piece of property was held in an interest-bearing account before the Attorney General took possession of the funds. *Id.* While Defendants held Gerlach's property, it earned income. *Id*. at ¶ 28. Gerlach alleges that the Defendants and the State have taken that income and refuse to compensate her for the time value of that property. *Id*. at ¶ 27.

Gerlach initiated this action on January 12, 2022, asserting the Defendants violated the Fifth and Fourteenth Amendments "by taking earnings on unclaimed property while in state custody and failing to compensate owners" for those earnings. *Id.* at 1. Gerlach makes requests for injunctive and declaratory relief including a declaration that failure to pay interest on all property claimed under the Revised Indiana Unclaimed Property Act is a violation of the Takings Clause, an order enjoining the Attorney General and Treasurer from further violations, and an order that Indiana must keep separate unclaimed property from the State's general fund. Further, she asks the Court to award just compensation for income earned by her still unclaimed property and damages against the current and former Indiana Attorneys General for violations of the Takings Clause.

The Defendants filed their Answer to the Complaint on April 12, 2022 ([Filing No. 22](#)) and their Motion for Judgment on the Pleadings on June 30, 2022 ([Filing No. 32](#)). The Defendants attached to their Motion and to their reply in support of their Motion ([Filing No. 41](#)) affidavits

from Amy Hendrix ("Hendrix"), Director of the Unclaimed Property Division of the Office of the

Indiana Attorney General (Filing No. 32-1 and Filing No. 41-1), and Michael Frick, Chief Deputy

Treasurer and Portfolio Manager for the Indiana State Treasurer's Office (Filing No. 41-2).  These

affidavits state that on June 18, 2022, the Unclaimed Property Division began paying interest on

claims for funds taken from non-interest-bearing accounts (Filing No. 32-1).  The Division pays

interest matching the State's "internal rate of return" (Filing No. 32-1 at 2), which is calculated as

the "aggregated investment rate" on the State's general fund and other accounts not invested

separately (Filing No. 41-2 at 3).  The abandoned property fund is not separately invested from the

State's general fund (Filing No. 41-2 at 2). Hendrix affirms that the Attorney General Office's

Unclaimed Property Division has no intention of ending these interest payments (Filing No. 32-1

at 4).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties

have filed a complaint and an answer and the pleadings are closed.  Rule 12(c) motions are

analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).  *Pisciotta v. Old

Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir.

1996). The complaint must allege facts that are "enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.

2d 929 (2007). Although "detailed factual allegations" are not required, mere "labels,"

"conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*

Stated differently, the complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation

and quotation marks omitted).  To be facially plausible, the complaint must allow "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III.   DISCUSSION

On January 12, 2022, Gerlach filed the instant Complaint challenging the Defendants' retention of the earnings on her property held as unclaimed property by them under the Indiana Revised Unclaimed Property Act, Ind. Code § 32-34-1.5, *et seq*., and its predecessors (the "Act"). Count I is a Claim for declaratory and injunctive relief, against Defendants Rokita and Mitchell in their official capacities, on behalf of Plaintiff and the Rule 23(b)(2) Class; Count II is a Claim for just compensation, against Defendants Rokita and Mitchell in their official capacities, on behalf of Plaintiff Gerlach and the Rule 23(b)(3) Class; and Count III is Claim for compensatory relief, against Defendants Rokita, Hill, and Negangard in their individual capacities, on behalf of Gerlach and the Rule 23(b)(3) Class. (Filing No. 1 at 7-14.) Gerlach alleges the Defendants violate the Fifth and Fourteenth Amendments of the United States Constitution by taking earnings on unclaimed

property while in state custody and failing to compensate owners, thereby violating the Constitution's protection of the earnings and the time value of money. (Filing No. 1 at 1 ).

The Defendants seek a judgment on the pleadings and dismissal of Gerlach's Complaint for two reasons: first, the Court lacks jurisdiction under Article III over Gerlach's claim for prospective relief because the Office of the Attorney General has changed its practice to ensure payment of interest on non-interest-bearing unclaimed property; and second, the Eleventh Amendment bars Gerlach's claims for retrospective monetary relief because any such relief would be paid from the State's treasury.

The Court will first address Gerlach's Motion to Strike and Motion for Oral Argument and then turn to the Defendants' Motion for Judgment on the Pleadings.

## A.    Motion to Strike and Motion for Oral Argument

Gerlach asks the Court to strike the two affidavits attached to the Defendants' reply and to strike arguments made by the Defendants in reply.  In the alternative, she asks for leave to file a surreply brief.  She also request oral argument on the pending motions.

### 1.    Motion to Strike Defendants' Affidavits

The "purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010).  "New arguments and evidence may not be raised for the first time in a reply brief.  Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (citations omitted).  "Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the

reply brief or objections to the admissibility of the evidence cited in the response." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utilities*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019).

In considering a motion to dismiss the court may also consider affidavits and other documentary evidence which have been filed, so long as any factual disputes are resolved in favor of the non-movant. *See Int'l Medical Group v. American Arbitration Ass'n* 149 F. Supp 2d 615( SDIN May 25, 2001) citing, *McIlwee v. ADM Indus., Inc.,* 17 F.3d 222, 223 (7th Cir. 1994); *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1122 (7th Cir.1983).

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay.*" Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

Gerlach argues that Defendants improperly included new evidence in their reply brief and this new evidence should be stricken, or, in the alternative, the Court should afford her leave to file a surreply brief so that she may refute the new facts alleged and explain why the affidavits remain insufficient to support the Defendants' Motion (Filing No. 42 at 3). Gerlach asserts that the affidavits attached to the Defendants' reply brief included information that was "known [to the Defendants] and obviously relevant to the Defendants' motion," and therefore should have been included in the brief supporting the Motion. *Id.* Gerlach relies on *Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999) in support of her argument that the Court is required to disregard the reply brief affidavits because she has had no opportunity to contest the facts alleged in the affidavits. (Filing No. 51 at 2.)

The Defendants respond that the arguments made in their reply brief and the newly presented affidavits are proper replies to Gerlach's arguments in her response brief (Filing No. 49

at 6). They point out that their Motion and supporting brief laid out two reasons for dismissal, mootness and Eleventh Amendment bar, and Defendants argue that these reasons were merely expanded upon in their reply brief in order to rebut Gerlach's arguments. *Id.* at 7–8. The Defendants contend that the affidavits attached to their reply respond directly to issues brought up by Gerlach in her response brief, and are offered to assist the Court in determine whether it has subject matter jurisdiction over the claims. *Id.* at 8.

In *Sapperstein*, the Seventh Circuit held that the district court abused its discretion in deciding against the plaintiff on subject matter jurisdiction based on an affidavit submitted by an employee of the defendant. 188 F.3d at 856. The court noted that "[w]here evidence pertinent to subject matter jurisdiction has been submitted, . . . 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* at 855 (quoting *United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The court determined however, that "[g]iven its source and content, in the circumstances the affidavit was not by itself credible, and the trial court erred in relying upon it without further inquiry" for two reasons: 1) the affiant's status as an employee of the business putting forward the affidavit made her "not a disinterested witness" and "subject to their influence, in a sense in their power" rendering difficult a credibility determination "from the face of an affidavit," and 2) the affidavit indicated that the business fell $2,500.00 short of the $500,000.00 in sales required to satisfy the statute's jurisdictional minimum leaving open the possibility that this shortfall was a mere accounting error and provided a basis for doubt as to the veracity of the facts alleged. *Id.* at 856.

The circumstances here, however, are different from those in *Sapperstein*; and the Court concludes that the affidavits are responsive to Gerlach's arguments and are not new evidence that requires additional briefing. Here, the affidavits filed by the Defendants are directly responsive to

concerns raised by Gerlach in her response brief.  In her response brief, Gerlach questions the meaning and calculation method of "internal rate of return" as used by the affiant in the Defendants' exhibit attached to their opening brief. (Filing No. 36 at 9–12.)  The Defendants' affidavits attached in their reply respond directly to this concern.  The affidavits also clarify the definition of "internal rate of return," explain the calculation method, and even contain a chart with the results of such a calculation (*see* Filing No. 41-1; Filing No. 41-2).

Further, neither of the factors from *Sapperstein* raising doubt as to the facts alleged in that affidavit applies here.  While in this case both affiants are employees of the State of Indiana, their credibility is not diminished by that status.  Instead, the positions of authority the affiants hold in the Office of the Indiana Attorney General and the Indiana State Treasurer's Office enhance their credibility with regard to internal practices of these offices.  Secondly, there is no indicia of error, accounting or otherwise, that would give rise to doubts as to the veracity of the facts in the affidavits.  The Court is well within its discretion to consider the contents of the affidavits attached to the Defendants' reply without further briefing, and there is no basis for them to be stricken.

### 2.   Motion to Strike Defendants' Arguments

Gerlach also contests consideration of arguments put forward by the Defendants in their reply brief that 1) Gerlach does not have standing to ask the Court for injunctive relief prohibiting commingling of the State's general and unclaimed property funds, and 2) Gerlach does not have standing for this suit against former Attorneys General Negangard and Hill (Filing No. 42 at 4–5).  She also challenges arguments regarding the viability of claims against individuals for violations of the Takings Clause under § 1983 (Filing No. 51 at 4).  She asserts that these arguments were raised for the first time in the reply brief, giving her no opportunity to respond (Filing No. 42 at 4).  Gerlach asks for the arguments concerning standing and individual liability for Takings Clause violations to be stricken or for leave to file a surreply.  *Id.*

9

Standing is a jurisdictional element that a plaintiff must satisfy. "Establishing standing is the plaintiff's burden and 'must be secured at each stage of the litigation.'" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007–08 (7th Cir. 2021) (quoting *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020)). "This is because the elements of standing are 'not mere pleading requirements but rather an indispensable part of the plaintiff's case.'" *Id.* at 1008 (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)). "While the Court normally considers issues raised for the first time on reply to be waived, standing is a jurisdictional issue that the Court must address." *Schunn v. Zoeller*, 2012 WL 5462679 (S.D. Ind. Nov. 8, 2012), *rev'd on other grounds sub nom. Cerajeski v. Zoeller*, 765 F.3d 577 (7th Cir. 2013).

Because the standing requirement is indispensable to Gerlach's case, all arguments regarding standing are responsive to essential claims by Gerlach in her Complaint, and Gerlach was inherently on notice to any challenge to her standing. Gerlach's claims must survive challenges to her standing at all stages of the litigation, including each stage of briefing on a motion for judgment on the pleadings. The Court will consider these arguments without the necessity of further briefing.

Lastly, in response to Gerlach's claim that the Defendants' argument that individuals cannot be liable for Takings Clause violations was brought up for the first time in reply, the Defendants contend that they raised Eleventh Amendment immunity as one of two central arguments in support of their Motion. Gerlach was thus placed on notice that they were challenging her assertion that the Defendants were subject to her suit. (Filing No. 33.)

The Court agrees. Defendants put forward the argument that the named individuals and elected officials were not subject to this suit in their Motion and opening brief. Gerlach was then afforded the opportunity to respond as to why the individuals named were subject to suit and did

so in her response brief.  (Filing No. 36 at 18–20.) The Defendants then, in reply, further explained their reasoning why the individuals were immune from suit.  (Filing No. 41 at 17.)  The Defendants are permitted to "expand upon and clarif[y] the arguments made in [their] opening motion" so long as they do not "raise wholly new arguments."  *Ripberger v. Corizon, Inc. v. Corizon, Inc.*¸ 2012 WL 4340716, at *1 n.1 (S.D. Ind. Sept. 20, 2012).  Although the Court always tries to allow litigants a full and fair opportunity to respond to arguments made by their adversary, including allowing surreplies, surreplies are not allowed under the local rules unless they are to address newly raised evidence or arguments. *Chaib v. GEO Group, Inc.*, 92 F. Supp. 3d 829, 835 (S.D. Ind. 2015) Because the Defendants' reply argument was contained within the reasoning put forward in their opening brief, the Defendants did not stray into impermissible new arguments which would allow a surreply.

Accordingly, the motion to strike and alternative request to file a surreply is **denied**.

### 3.    Motion for Oral Argument

Having reviewed the Motion and the parties' briefs, the Court determines that oral argument is not necessary to decide the Defendants' Motion for Judgment on the Pleadings.  The parties have thoroughly briefed the issues raised, and the Court is prepared to rule on the Motion.  Accordingly, the Motion for Oral Argument (Filing No. 43) is **denied**.

### B.    Defendants' Motion for Judgment on the Pleadings

Gerlach alleges that, following *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), the Takings Clause requires the State of Indiana to pay interest on unclaimed property even when the property was non-interest-bearing before coming into the possession of the Indiana Attorney General. In *Goldberg*, the Seventh Circuit ruled that owners of property taken by a state as unclaimed are "entitled to 'income that the property earns' less custodial fees" regardless of whether the property was earning interest before it came into the hands of the state. *Id.* at 1011.  Gerlach

asserts that the Attorney General's Division of Unclaimed Property has failed to comply with this ruling and has refused to pay the interest on this category of property (Filing No. 1 at 1–2).

The Defendants do not take issue with Gerlach's contentions on the constitutional requirements of the Takings Clause and do not raise any question that, prior to June 18, 2022, the Unclaimed Property Division had not included interest in payments made to owners of non-interest-bearing unclaimed property, including the payment made to Gerlach on November 8, 2021 (Filing No. 22 at 10).  Rather, the Defendants present two bases for judgment on the pleadings addressing the requested injunctive and declaratory relief and damages request separately (Filing No. 32).  They contend that Gerlach's requests for injunctive and declaratory relief should be dismissed as moot, and her request for damages is barred by the Eleventh Amendment.  *Id.*  The Court will address each of these contentions in turn.

### 1.   **Injunctive and Declaratory Relief**

The Defendants rely on affidavits submitted by officials from the Indiana Attorney General's Office and the Office of the Indiana State Treasurer to demonstrate that any practices causing injury to Gerlach have ended.  The Defendants argue that since the alleged conduct has ended, there is no longer anything for the Court to enjoin, therefore, Gerlach's requests for injunctive and declaratory relief are moot. Defendants argue that nothing in the Complaint demonstrates that Gerlach is harmed in any way by the statutorily mandated method of handling funds derived from unclaimed property. Since no harm by this system is alleged in the Complaint, Gerlach does not have standing to ask for an injunction mandating any change in the state government's handling of funds.

Gerlach contends that the affidavits do not sufficiently demonstrate mootness and that the Court should not consider the affidavits as they are not part of the pleadings.  (Filing No. 36 at 1–2.)  She argues that it would be improper for the Court to consider anything beyond the Complaint

and Answer when ruling on a Rule 12(c) motion, and the Court is limited to ruling based on allegations in the Complaint. *Id.* at 6. Gerlach points out that voluntary cessation of an activity does not moot a case unless it is absolutely clear that the practice cannot resume, and she argues the Defendants have not met that heavy burden. *Id.* at 9. She points out that the new practice could be overridden by the Indiana General Assembly, altered by a future Attorney General, or simply abandoned. *Id.* at 12–13, 16. She contends the change here is unlike the changes in *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020), which rendered that case moot, because those changes were analogous to legislation whereas the changes here were merely changes to internal governmental practice.

Because the facts in the affidavits go to the Court's subject matter jurisdiction, the Court has authority to consider the Defendants' affidavits to render a determination on mootness. Article III of the Constitution grants jurisdiction to federal courts only where there is an "actual, ongoing controversy." *Stotts v. Community Unit School Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000). "The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action." *Id.* Where there is no actual, ongoing controversy, the case is moot and must be dismissed for lack of jurisdiction. *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Moreover, when considering a motion concerning subject matter jurisdiction, courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," *Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir. 1979).

Because the issue of mootness is a matter of the Court's subject matter jurisdiction over this case, the Court may, and indeed must, consider all evidence on mootness at each stage of

litigation. The Court rejects Gerlach's contention that it would be improper to consider the Defendants' affidavits.

That said, the Court finds that the affidavits demonstrate that the Court does not have subject matter jurisdiction because the case is moot. "To establish Article III standing, a plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins v. Yellen*, 210 L. Ed. 2d 432, 141 S. Ct. 1761, 1779 (2021) (quoting *Lujan*, 504 U.S. at 560–61). Gerlach cannot make a showing that the Court can issue relief that would repair ongoing injury to her as the Defendants have ceased any practice violating the Takings Clause. The affidavits demonstrate that Gerlach, along with any other claimant of unclaimed property, would receive the income earned by the property regardless of the source of the property. The Court cannot issue any declaratory or injunctive relief beyond what is already current practice of the Division of Unclaimed Property.

Gerlach correctly points out the general principle that "a defendant's voluntarily cessation of challenged conduct will not render a case moot because the defendant remains 'free to return to his old ways.'" *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)). On the other hand, "[w]hen the defendants are public officials, however, we place greater stock in their acts of self-correction, so long as they appear genuine." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991). Government actors are granted a presumption that their changes in policy and practice are made in good faith. *See Speech First, Inc.*, 968 F.3d at 646. "A defendant seeking dismissal based on its voluntary change of practice or policy must clear a high bar. 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Ciarpaglini*

*v. Norwood*, 817 F.3d 541, 545 (7th Cir. 2016) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968)).

The Court is persuaded that Defendants have cleared the high bar necessary for dismissal. As arms of the state government, the Office of the Attorney General and Indiana State Treasurer's Office, are granted the presumption that their change in practice was done in good faith. Hendrix expressed that her office has no intention of changing tack and will not resume refusing to issue interest claims on any category of unclaimed property. (Filing No. 32-1 at 4.) Although the change in practice came after the initiation of this lawsuit, the change appears to be an attempt by government officials to comply with the law rather than circumvent a lawsuit. The policy has been put into actual effect, and, according to Hendrix, payments have been made to claimants as required by *Goldberg* for interest earned by property held by the Attorney General even when not in interest-bearing accounts prior to the State's possession.

The method of calculation as outlined in the affidavits complies with the requirement that claimants receive the income earned by the property because it is the exact investment return that the State received while the property was in its possession. There is little reason to believe that Gerlach or any other property claimant would not receive such payments today or in the future. Although the changes here were made administratively and not by legislation or regulation, changes in policy need not be put into place in a manner similar to legislation to moot a case, and the Court does not find any reason beyond speculation to believe the Division of Unclaimed Property will not follow *Goldberg* in the future or to believe that the administrative change will be overridden legislatively. Because the Defendants have demonstrated that it is clear that the prior conduct will not resume, the Unclaimed Property Division's change in practice renders as moot all claims for declaratory and injunctive relief related to the payment of interest on prior non-interest-bearing property and the calculation method for such payments.

Furthermore, the Defendants' arguments on standing related to Gerlach's claims for injunctive relief are well taken.   In her Complaint Gerlach asks the Court to enjoin the commingling of the State's general fund and unclaimed property in the State's possession (Filing No. 1 at 10).   The Defendants argue that the pleadings do not demonstrate any reason why Gerlach is harmed by the State's fund management system.   A plaintiff "bears the burden of establishing Article III standing."  *Silha v. ACT, Inc.*, 807 F3d 169, 173 (7th Cir. 2015). And to do so a plaintiff must show that she has "suffered an 'injury in fact.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).   Gerlach here has not shown any injury resulting from the origin of any payment she may receive from the State of Indiana for her claim on unclaimed property or any interest earned by that property.   Therefore, she has not established standing to pursue an order from the Court requiring the State to engage in certain accounting practices.

Accordingly, the Court **grants** the Defendants' Motion for Judgment on the Pleadings with regard to injunctive and declaratory relief.  All of Gerlach's requests for injunctive and declaratory relief are denied.

## 2.    Damages Claims

The Defendants argue that Gerlach's claims for damages are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits for damages against the State and its officers in their official capacity. *Pennhurst v. Halderman*, 465 U.S. 89, 101– 102 (1984). However, the Eleventh Amendment does not block a suit for damages against a state official in his or her individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). Gerlach argues that her claims against the individuals are well pled allegations of violations under 42 U.S.C. § 1983, which allow her to secure judgments against the individuals themselves and not against the State.  (Filing No. 36 at 18–19.)

16

The Defendants point out that although Gerlach has styled her Complaint to make claims against Indiana officials in their individual capacities, any damages that may be awarded would be paid from the State's treasury.  Thus, the Defendants argue, these are in effect claims against the State. Where claims are in fact against the State, Eleventh Amendment immunity from suit has been held to apply.  (Filing No. 33 at 12–15.) Defendants assert that because a taking for "public use" can only be done by the State and not by an individual, the Takings Clause cannot be violated by an individual (a taking by an individual would instead be conversion, they claim) (Filing No. 41 at 14–15).

Gerlach next argues that the Eleventh Amendment is inapplicable to Takings Clause violations because the Fourteenth Amendment permitted superseding federal court jurisdiction. She argues that the Fourteenth Amendment altered the balance between the federal government and the states and should be viewed as creating an exception to the Eleventh Amendment by incorporating a self-executing Takings Clause.  (Filing No. 36 at 23–27.)  The Court is not persuaded. The Defendants point to *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) in which the Seventh Circuit noted that "so long as courts remain open to [Takings Clause] claims," Eleventh Amendment immunity still applies.  The Seventh Circuit noted that although the United States Supreme Court held in *Knick v. Twp. of Scott, Pennsylvania*, 204 L. Ed. 2d 558, 139 S. Ct. 2162 (2019) that a Takings Clause plaintiff need not seek redress in state court against a defendant municipality before filing suit in federal court, no Circuit has held that this case or the Fourteenth Amendment upset the federal-state balance undergirded by the Eleventh Amendment.  *Pavlock*, 35 F.4th at 589; *see also Garrett v. State of Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980).

Gerlach further argues that state courts are not in fact open to Takings Clause claims alleging the State failed to pay income earned by unclaimed property.  She contends that federal courts must have jurisdiction because Indiana courts have foreclosed the issue.  Gerlach argues

that *Smyth v. Carter*, 845 N.E.2d 219 (Ind. Ct. App. 2006) (holding that the Fifth Amendment does not require the state to pay interest on unclaimed property that originated in non-interest bearing accounts), is still controlling law in Indiana and that filing a claim would be frivolous and perhaps sanctionable.  ([Filing No. 36 at 21](#)–22.)  The Defendants respond that the Indiana Supreme Court has not spoken on this issue, and its denial of transfer in *Smyth* cannot be interpreted as any statement on the merits, so no final word has come down from Indiana courts on the issue.  They contend this opens up Indiana courts for these claims.

Gerlach argues that the ruling in *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017), demonstrates that Indiana courts are closed to her claims.  In *Kolton*, the court analyzed whether a state court remedy is available on the plaintiff's claim for compensation for interest earned on an interest-bearing account.  *Id.* at 533.  At the time, the since-overruled holding of *Williamson County* that Takings Clause violations do not occur until a state has taken property and all state administrative and legal procedures had been exhausted was controlling. *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S. Ct. 3108, 3121, 87 L. Ed. 2d 126 (1985), *overruled by Knick*, 204 L. Ed. 2d 558, 139 S. Ct. 2162.  The court noted that both an Illinois statute and Supreme Court decision clearly denied compensation for income on interest-bearing unclaimed property in its holding that Illinois courts were closed to these Takings Clause claims.  *Id.*

This Court cannot conclude that Indiana courts are foreclosed to Takings Clause claims for interest earned by unclaimed property.  The court in *Kolton* did not analyze whether the state court is open to this claim for the purposes of the Eleventh Amendment, and the case does not present analogous facts.  Both *Williamson County* and *Knick* dealt with Takings Clause claims against a municipality rather than the state.  *Williamson County*, 473 U.S. at 175; *Knick*, 139 S. Ct. at 2168.  Municipalities do not enjoy Eleventh Amendment sovereign immunity, *Jinks v. Richland County*,

538 U.S. 456, 466, 123 S. Ct. 1667, 155 L. Ed. 2d 631 (2003), so the court did not conduct any analysis under the Eleventh Amendment.  Further, even if the state court exhaustion analysis were applied to the Eleventh Amendment, the facts of *Kolton* cannot demonstrate unavailability of a state court remedy here.  *Kolton*, 869 F.3d at 535.  While *Smyth* does remain controlling law in Indiana, the Indiana Supreme Court has not spoken on the issue, and Gerlach cannot point to any Indiana statute expressly prohibiting the requested compensation.  Further, the Seventh Circuit holding requiring such payments was issued in 2019, thirteen years after *Smyth*.  There is little reason for this Court to find that Indiana courts would fail to follow controlling federal rulings on federal constitutional law or that they would find suits presenting such arguments to be frivolous after a change in controlling precedent.

Moreover, the Court declines to conclude that the Eleventh Amendment cannot apply to Takings Clause claims.  Neither the Seventh Circuit nor any other circuit has come to such a conclusion. Because the Eleventh Amendment bars claims against a state for damages, Gerlach's claims for just compensation and other damages cannot proceed against Defendants Rokita and Mitchell in their official capacities.

The Court finds that the claims against Defendants Rokita, Negangard, and Hill in their individual capacities cannot proceed.  An individual cannot be held liable for a violation of the Takings Clause. *See Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (A "wrongful 'taking,' detention or theft by an individual of the property of another is not a constitutional 'taking' as that term has been defined by the fifth amendment and commonly understood by the courts.").

Additionally, because any taking was done for the benefit of the State, any judgment for just compensation would be paid out by the State treasury.  In *Kolton*, the Seventh Circuit signaled that the Eleventh Amendment bars money damages against an official in his individual capacity by recognizing: "after all, [the Treasurer] did not pocket any earnings on Kolton's money. Illinois

19

did." *Kolton* at 536.  Because any judgment would have to come from the State rather than the named individuals, the individual capacity claims are in reality claims against the State barred by the Eleventh Amendment regardless of how it is pled.  It is well established that the State is not a "person" who is subject to suit under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  This Court cannot issue a judgment for violation of § 1983 against the State of Indiana; so all claims against the named individuals must be dismissed.

Because Gerlach's claims for damages are barred by the Eleventh Amendment and are not proper under § 1983, the Court **grants** the Defendants' Motion for Judgment on the Pleadings related to damages claims against the Defendants. Accordingly, all claims against all Defendants[2] for damages, attorney's fees,[3] and just compensation are now **dismissed**.

## IV.   CONCLUSION

Gerlach has fallen short of her burden to establish that this Court has subject matter jurisdiction over her claim for prospective relief and the Eleventh Amendment bars her claims for damages.  For the reasons explained above, the Defendants' Motion for Judgment on the Pleadings (Filing No. 32), is **GRANTED**. Plaintiff Tina Gerlach's Motion to Strike, or Alternatively, for Leave to File a Surreply (Filing No. 42), and Motion for Oral Argument (Filing No. 43) are **DENIED**.

---

[2] The Defendants have argued that Gerlach does not have standing for her claim against Attorneys General Negangard and Hill as she did not make a claim on unclaimed property while they held the office of Attorney General, and she was therefore not denied interest payments on the property by Negangard or Hill. As the claims against Negangard and Hill are now dismissed, the Court need not address this issue. In addition, since no claims for relief remain, Ms. Gerlach's request for class certification is also dismissed.

[3] Gerlach requests an award of attorney's fees under 42 U.S.C. § 1988. This section allows attorney's fees to be awarded only where a plaintiff is successful under certain statutes including 42 U.S.C. § 1983. Since Gerlach alleges only that attorney's fees are appropriate under § 1988, and all § 1983 claims are now dismissed, her attorneys' fees request is also dismissed.

All claims are **dismissed with prejudice** as no amount of revision could cure their legal

deficiencies[4] Final judgment will issue under separate order.

   **SO ORDERED.**

Date:  3/29/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles R. Watkins
GUIN, STOKES & EVANS, LLC
charlesw@gseattorneys.com

Garrett D. Blanchfield, Jr.
REINHARDT WENDORF & BLANCHFIELD
g.blanchfield@rwblawfirm.com

Matthew Thomas Heffner
HEFFNER HURST
mheffner@heffnerhurst.com

Matthew Hurst
HEFFNER HURST
mhurst@heffnerhurst.com

Roberta A Yard
REINHARDT WENDORF & BLANCHFIELD
r.yard@rwblawfirm.com

Meredith McCutcheon
OFFICE OF THE INDIANA ATTORNEY GENERAL
meredith.mccutcheon@atg.in.gov

J. Derek Atwood
OFFICE OF THE INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

---

[4] *Cf. Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").